UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SABRINA DE SOUSA,<br>1418 Swann St., NW<br>Washington, DC 2009,<br><br>          PLAINTIFF<br>    vs.<br><br>CENTRAL INTELLIGENCE AGENCY,<br>Washington, DC 20505<br><br>DEPARTMENT OF DEFENSE,<br>1400 Defense Pentagon<br>Washington, DC 20301-1400<br><br>DEPARTMENT OF STATE,<br>2201 C St., NW<br>Washington, DC 20520<br><br>         DEFENDANTS | ) <br>) <br>) Judge _____<br>) Civil Action No. _____<br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

## **COMPLAINT**

### THE PARTIES

1.      Plaintiff Sabrina De Sousa is a citizen of the District of Columbia.

2.      Plaintiff is a citizen of Washington, DC.

3.      Defendant Central Intelligence Agency (CIA) is an agency of the United States. The CIA has possession, custody and control of records Plaintiff seeks.

4.      Defendant Department of Defense (DOD) is an agency of the United States.

5.      The United States Air Force ("Air Force") and the Office of the Secretary of Defense (OSD) are components of the DOD.  The Air Force and OSD have possession, custody and control of records Plaintiff seeks.

6.      Defendant Department of State is an agency of the United States. The Department of State has possession, custody and control of records Plaintiff seeks

## JURISDICTION AND VENUE

7.      This action arises under the Freedom of Information Act ("FOIA"), 5 U.S.C § 552, and the Privacy Act, 5 U.S.C § 552a.

8.      This Court has jurisdiction over the parties and subject matter pursuant to 5 U.S.C § 552(a)(4)(B) and 5 U.S.C § 552a(g)(1)(B)..

9.      Venue is proper in this district pursuant to 5 U.S.C § 552(a)(4)(B) and 5 U.S.C § 552a(g)(5).

## BACKGROUND

10.      Plaintiff was a career federal employee who was accredited to the U.S. Embassy in Rome, Italy between August 1998 and July 2001, with full diplomatic immunity.  She then occupied a new position in U.S. Embassy Rome, Italy as Consul from August 2001 to January 2004. (See Exhibit A.) An Italian prosecutor has claimed that Plaintiff worked on behalf of the CIA.

11.     In February 2003, the CIA rendered[1] an Islamic cleric named Hassan

Mustafa Osama Nasr, also known as "Abu Omar," in Milan, Italy and flew him to Egypt,

via Germany.  On that day, Plaintiff was vacationing at a ski resort in Madonna di

Campiglio, Italy, approximately 130 miles from Milan, Italy.

12.     While incarcerated in Egypt, Abu Omar said he was tortured.

13.     Abu Omar had been under investigation by the Italian police, DIGOS, for

his links to terrorist groups.   According to the DIGOS chief's testimony in June 2007,

DIGOS ended their technical and physical surveillance of Abu Omar in January 2003.

14.     The chief of Italian Intelligence (formerly known as SISMI) denied any

involvement in the rendition.  The only Italian who admitted to participating in the

rendition, was Luciano "Ludwig" Pironi, an Italian Carabinieri officer who did so in an

unofficial capacity.  Pironi was responsible for commencing the rendition by detaining

Abu Omar long enough to facilitate the abduction/kidnapping.  Pironi was later granted

immunity to prosecution for his actions.

15.     In 2004, an Egyptian court ordered the release of Abu Omar for lack of

prosecutable evidence against him.  He was issued a gag order, which he violated through

phone calls to family and contacts in Italy confirming his disappearance and describing

his torture.  He was therefore rearrested.

16.     In 2004, an Italian prosecutor in Milan, Italy initiated an investigation into

the disappearance of Abu Omar.  Plaintiff was under investigation for allegedly

---

[1] An "extraordinary rendition" or "irregular rendition" is the government-sponsored
kidnapping/abduction and extrajudicial transfer of a person from one country to another.
U.S. President Clinton authorized extraordinary rendition to nations known to practice
torture, called torture by proxy.

participating in planning the Abu Omar operation on behalf of the Central Intelligence Agency ("CIA").

17.     In 2005, An Italian court issued an arrest warrant for Abu Omar.

18.     In 2006, CIA director Porter Goss ordered the agency's independent inspector general to begin a review of the operation.  Jose A. Rodriguez Jr., then head of the CIA's National Clandestine Service (NCS), stopped the Inspector General's review, stating that the NCS would investigate the operation itself.  Plaintiff requested to see the results of the Accountability Board's investigation, but was not allowed to do so.  Upon information and belief, the review was made available to only a few members of Congress, but not their staff.

19.     In July 2006, the Italian prosecutor indicted and issued an arrest warrant for plaintiff, whom he identified as one of the four U.S. officials mainly responsible for the alleged kidnapping.  The warrant against Plaintiff is a EUROPOL warrant, meaning that if she attempts to enter any country in the European Union, she faces immediate arrest and transfer to Italian authorities. Diffusion notices to numerous other non-EU countries were also issued.  The warrant is still in effect.

20.     In total the Italians indicted 26 Americans. Five of those indicted were U.S. diplomats accredited in Italy; one was a U.S. Air Force colonel.  Throughout the investigation, Plaintiff's employer instructed Plaintiff not to communicate with her Italian court-appointed defense lawyer or with the media.  She was also informed that none of the other defendants would be allowed to obtain private Italian counsel.

21.     Plaintiff later learned that one of the defendants, Col. Joseph Romano (USAF), was provided with a team of U.S. military attorneys, as well as two U.S. government-retained and funded Italian defense attorneys.

22.     Plaintiff, a naturalized U.S. citizen, was barred by her employer from leaving the U.S. to travel to India to see her aged mother because she might be arrested and extradited to Italy.  Neither could plaintiff visit her siblings who live outside the U.S.

23.     From 2005-2007, Plaintiff used all of her employer's available internal options (i.e., supervisors, Ombudsman, IG-twice, EEO, etc.) to get her employer to invoke Diplomatic immunity on her behalf, provide her with legal counsel in Italy, and provide her with options for seeing her mother.  Her attempts were unsuccessful.

24.     In 2007, having exhausted all internal options, Plaintiff hired external counsel and, as permitted by law, attempted to engage various members of the U.S. Congress in an attempt to resolve the on-going situation in Italy, as well as personal hardships, like the travel ban, which had been imposed on her.

25.     Around the time that her arrest warrant was issued, Plaintiff wrote to Secretary of State Condoleezza Rice requesting that the U.S. government invoke diplomatic or consular immunity with respect to her alleged involvement in the kidnapping of Abu Omar and provide her with legal representation to counter the charges in the Italian criminal case.  She was ignored.

26.     Between 2007 and 2012, Plaintiff's external counsel wrote letters to the senior leadership of the Department of State, Department of Justice, and CIA, to the Director of National Intelligence (DNI), and to numerous members of the Congress.  The only two responses her counsel received were from the CIA advising her that she would

be subject to disciplinary action if she traveled abroad to see her mother and the Office of the DNI (Burgess) stating that the U.S. "was committed to bringing the matter to closure."

27.     The DNI did not respond to Plaintiff's question regarding protections for federal employees assigned overseas and who carry out sanctioned intelligence activities authorized by the DNI and the President of the United States.

28.     In 2007, Abu Omar was released from an Egyptian jail without being charged for any crimes.  He remains in Egypt.

29.     That same month, an Italian judge indicted 26 U.S. government officials, including Plaintiff, for their alleged roles in the kidnapping.  Six Italian officials were also charged, including the head of the Italian Intelligence Service, General Nicola Pollari.  Abu Omar, for his part, filed a separate civil suit in Italy.

30.     In 2008 Plaintiff's employer took away her diplomatic passport. Upon information and belief, it was requested that the U.S. Embassy in New Delhi revoke Plaintiff's country clearance, thereby denying Plaintiff the right to leave the U.S. to see her mother.

31.     In early 2009, Plaintiff again wrote to Secretary of State Hillary Clinton requesting official U.S. government assistance with the Italian case. Plaintiff again did not receive a response.

32.     Therefore in February 2009, Plaintiff resigned from the federal government so she could travel to see her family in India.  In resigning, Plaintiff lost a career, a job and her pension.

33.     In May 2009, plaintiff brought a civil lawsuit[2] against the State Department and the CIA alleging, inter alia, that these agencies violated her constitutional rights by failing to assert diplomatic or consular immunity on her behalf in the Italian courts and by allowing defamatory information about her to spread unchecked. The government agencies moved to dismiss the plaintiff's lawsuit.

34.     Because of the lawsuit, in September 2009, DOJ granted Plaintiff paid legal counsel in Italy.  By the time the Justice Department agreed to provide that funding, the Italian criminal proceedings had been ongoing for three years and were nearing their final stages.  Subsequently, the court granted the government's motion to dismiss and denied Plaintiff's leave to file a Second Amended Complaint.

35.     Plaintiff was barred from fully disclosing information to her Italian attorney in the event that it was classified information. Plaintiff was therefore not able to fully defend herself in the Italian criminal case against the charges for which she was ultimately convicted in absentia.

36.     The agency defendants indicated that it was beyond the power of this Court to sanction the disclosure of classified information, even in such an in camera classified session, and that they would immediately appeal any decision by this Court to authorize such disclosure.

37.     In November 2009, the Italian courts convicted Plaintiff and 23 other Americans *in absentia* for the kidnapping rendition of Abu Omar and sentenced Plaintiff to five years in prison. Jeffery Castelli, the CIA's station chief in Rome and the architect

_____
[2] Case 1:09-cv-00896-BAH

of the rendition, was granted diplomatic Immunity by the Italian judge. A Milan appellate court subsequently overturned the immunity.

38.     In 2010, an Italian appellate court increased the prison term to 7 years.

39.     In 2010, Plaintiff sought the assistance of Human Rights First to intercede on her behalf with Congress, specifically Senator Diane Feinstein, Senate Select Committee on Intelligence (SSCI) and Congresswoman Jan Schakowsky, and the House Permanent Select Committee on Intelligence (HPSCI), to exercise their oversight responsibilities and conduct an investigation of the rendition operation and allegations of torture. Plaintiff sought to have Congress fulfill its obligations under the Convention Against Torture, which obligates governments to promptly and impartially investigate victims' complaints of torture and cruel treatment, to criminalize all acts of torture, and to prosecute violations.

40.     Plaintiff was ignored by SSCI and HPSCI.

41.     In 2012, the Italian court of Cassation upheld the convictions despite the Italian prosecutor asking for a dismissal of charges against Plaintiff. (Exhibit B.)

42.     In April 2013, the President of Italy pardoned one American only, the U.S. colonel, stating that the pardon was granted because President Obama had "put an end to an approach (renditions) to the challenges to national security . . . considered by Italy and the European Union not compatible with fundamental principles of rule of law."

43.     In late 2013, Plaintiff wrote to Secretary of State Hillary Clinton and Michael H. Posner, Assistant Secretary of State for the Bureau of Democracy, Human Rights and Labor, who previously served as President of Human Rights *First* again urging an investigation. (Exhibit C.)

44.     In 2013, Plaintiff's Italian counsel petitioned the President of Italy for a pardon as well.  There has been no response from the Office of the President of Italy.

45.     In December 2013, Abu Omar was convicted in absentia to six years in prison in a fast tracked-closed trial.

46.     His case and that of his wife, *Nasr and Ghali vs. Italy*  (No. 44883 09), is pending before the European Court of Human Rights. Under Articles 3 (prohibition of inhuman and degrading treatment), 5 (right to liberty and security), 6 (right to a fair trial), 8 (right to respect for private and family life), and 13 (right to an effective remedy) of the Convention.

47.     Finally, in July 2014, through her private Italian counsel in Italy, Plaintiff became aware that the U.S. Embassy in Rome and the CIA were working with the Government of Italy to obtain clemency for several officers who had been convicted. One of those was Jeffery Castelli the architect of the Milan rendition. No one in the U.S. had contacted Plaintiff. (Exhibit D.) On further investigation, Plaintiff has come to believe that she had been deliberately excluded from this initiative.

48.     To date, the United States has not acknowledged the rendition; the CIA has declined to comment. The State Department also threatened a Glomar defense on any information related to the kidnapping of Abu Omar. (Exhibit E.)

49.     Plaintiff incorporates by reference each of the documents referred to in this Complaint.

## PLAINTIFF'S FOIA REQUESTS

*CIA*

50.     On May 8, 2014, Plaintiff submitted a FOIA/PA request to the CIA

requesting records:

- Discussing whether or not to take steps to defend or protect me (including but not limited to invoking immunity) against the charges that I participated in the rendition/kidnapping of Hassan Mustafa Osama Nasr, a/k/a Abu Omar, a/k/a Abu Umar (hereinafter "Abu Omar").

- Discussing whether or not to take steps to defend or protect any other individual (including but not limited to invoking immunity) charged with participation in the rendition/kidnapping of Abu Omar.

- Discussing whether or not to allow the trial of 26 U.S. citizens to proceed to convictions on charges of participating in the rendition/kidnapping of Abu Omar.

- Discussing or constituting authorization for the rendition/kidnapping of Abu-Omar

- Communication between CIA officials and the Department of Justice representative(s) at the U.S. Embassy in Rome mentioning or referring to the charges or trial of 26 U.S. citizens accused of participating in the rendition/kidnapping of Abu Omar.

- Communication between CIA officials and officials at the U.S. Department of State (including but not limited to the U.S. Embassies in Cairo and Rome) mentioning or referring to the rendition/kidnapping of Abu Omar

- Communication between CIA officials and officials at the U.S. Department of Defense mentioning or referring to the rendition/kidnapping of Abu Omar

- For the time period of 2008-2009, communication between CIA officials and members of Congress or their staff mentioning or discussing whether or not to take steps to defend or protect (including but not limited to invoking immunity) any of the 26 U.S. citizens accused of participating in the rendition/kidnapping of Abu Omar

- Discussing or mentioning whether or not the CIA Office of the Inspector General can or should investigate the rendition/kidnapping of Abu Omar, including but not

limited to communication between the CIA IG and Office of the Director of CIA.

- Reports or other results of the Accountability Review Board on accountability for those who were responsible for the rendition/kidnapping of Abu Omar

51. Plaintiff received a letter dated June 26, 2014 finally responding to her May 8, 2014 FOIA Request (F-2014-01745). The CIA refused to confirm or deny the existence of responsive records, pursuant to Exemptions 1 and 3.

52. On July 25, 2014, Plaintiff appealed the CIA's response to her FOIA request (F-2014-01745).

53. Plaintiff received a letter dated August 20, 2014 from the CIA stating that the appeal of her FOIA request (F-2014-01745) had been accepted and would be considered.

54. As of the filing of this Complaint, Plaintiff has not received a final response to her appeal of FOIA request F-2014-01745.

55. Under 5 U.S.C § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted her administrative remedies with regard to her FOIA/PA request F-2014-01745.

56. On September 3, 2014, Plaintiff submitted a second FOIA/PA request to the CIA requesting records:
- Constituting or reflecting communications between CIA officials and Avv. Fabio Cagnola which mention, discuss, or refer to clemency for the CIA officers (including myself) convicted in the Milan rendition case.
- Constituting or reflecting communications between CIA officials and the office of the President of Italy which mention, discuss, or refer to clemency for the CIA officers (including myself) convicted in the Milan rendition case
- Mentioning, discussing, or referring to clemency for the CIA officers (including myself) convicted in the Milan rendition case.
- Mentioning, discussing, or referring to my July 2, 2014 letter to Avv. Fabio Cagnola, Hon. John R. Phillips, Kathleen A. Doherty, and William Nardini regarding clemency for the CIA officers (including myself) convicted in the Milan rendition case (see attached letter).

57.     As of the time of filing of this Complaint, Plaintiff has not received a final response as to whether the CIA will release the requested records.

58.     Under 5 U.S.C § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted her administrative remedies with regard to her September 3, 2014 FOIA/PA request to CIA.

*OSD*

59.     On May 8, Plaintiff submitted a FOIA/PA request to the OSD requesting records:

- Discussing whether or not to assert the Status of Forces Agreement for any individual charged with participation in the rendition/kidnapping of Abu Omar. To assist in conducting a search and without limiting this request, these discussions are believed to have taken place between or among the Air Force JAG, the CIA, and Office of the Secretary of Defense

- Discussing pardons or potential pardons for individuals convicted of participation in the rendition/kidnapping of Abu Omar, for the period of 2009-2013.  To assist in conducting a search and without limiting this request, these discussions are believed to have taken place between or among the Air Force JAG, the CIA, the Office of the Secretary of Defense, the Italian Ministry of Defense, the Italian Ministry of Justice, and the Italian Office of the President

60.     Plaintiff received an email from the OSD dated May 29, 2014 assigning her request tracking number 14-F-0866 and stating that the request had been tasked to appropriate components to begin the search for responsive records.

61.     As of the filing of this Complaint, Plaintiff has not received a final response to her FOIA/PA request to the OSD with a determination as to whether the OSD will release or withhold all of the requested records or whether the OSD will grant a fee waiver.

62.     Under 5 U.S.C § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted her administrative remedies with regard to her FOIA/PA request to the OSD.

*Air Force*

63.     On June 4, Plaintiff submitted a FOIA/PA request to the USAF requesting

records:

- Discussing whether or not to assert the Status of Forces Agreement for any individual charged with participation in the rendition/kidnapping of Abu Omar. To assist in conducting a search and without limiting this request, these discussions are believed to have taken place between or among the Air Force JAG, the CIA, and Office of the Secretary of Defense

- Discussing pardons or potential pardons for individuals convicted of participation in the rendition/kidnapping of Abu Omar, for the period of 2009-2013.  To assist in conducting a search and without limiting this request, these discussions are believed to have taken place between or among the Air Force JAG, the CIA, the Office of the Secretary of Defense, the Italian Ministry of Defense, the Italian Ministry of Justice, and the Italian Office of the President

64.     The Air Force acknowledged receipt of the request in a letter dated June 9,

2014 and assigned it tracking number 7013 1090 0002 2366 1197.

65.     As of the filing of this Complaint, Plaintiff has not received a final

response to her FOIA/PA request to the Air Force with a determination as to whether the

Air Force will release or withhold all of the requested records or whether the Air Force

will grant a fee waiver.

66.     As of the filing of this Complaint, Plaintiff has not received a final

response to her FOIA/PA request to the Air Force with a determination as to whether the

Air Force will release or withhold all of the requested records or whether the Air Force

will grant a fee waiver.

67.     Under 5 U.S.C § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted her

administrative remedies with regard to her FOIA/PA request to the Air Force.

*State*

68.     On May 8, 2014, Plaintiff submitted a FOIA/PA request to the Department

of State requesting records:

- Communications constituting or mentioning the Secretary of State's concurrence
  in 2002 or 2003 for authorization to proceed with the rendition/kidnapping of Abu
  Omar

- Discussing whether or not to take steps to defend or protect me (including but not
  limited to invoking immunity) against the charges that I participated in the
  rendition/kidnapping of Abu Omar.

- Discussing whether or not to take steps to defend any other individual (including
  but not limited to invoking immunity) charged with participation in the
  rendition/kidnapping of Abu Omar.

- Discussing or mentioning the letters I sent to the Secretaries of State and the
  Assistant Secretary of State for Democracy, Human Rights, and Labor requesting
  immunity and an investigation into allegations of torture of Abu Omar. (Copies of
  the letters were attached to the FOIA request.)

69.     Plaintiff received a letter from the Department of State dated May 28,

2014 assigning her request tracking number F-2014-08802.  The letter stated that the

Department of State would begin processing Plaintiff's request.

70.     As of the filing of this Complaint, Plaintiff has not received a final

response to her FOIA/PA request to the Department of State with a determination as to

whether the agency will release or withhold all of the requested records or whether the

Department of State will grant a fee waiver.

71.     Under 5 U.S.C § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted her

administrative remedies with regard to her FOIA/PA request to the Department of State.

72.     On September 3, 2014, Plaintiff submitted a second FOIA/PA request to

the Department of State requesting records:

- Constituting or reflecting communications between DOS officials and Avv. Fabio Cagnola which mention, discuss, or refer to clemency for the CIA officers (including myself) convicted in the Milan rendition case.
- Constituting or reflecting communications between CIA officials and the office of the President of Italy which mention, discuss, or refer to clemency for the CIA officers (including myself) convicted in the Milan rendition case
- Mentioning, discussing, or referring to clemency for the CIA officers (including myself) convicted in the Milan rendition case.
- Mentioning, discussing, or referring to my July 2, 2014 letter to Avv. Fabio Cagnola, Hon. John R. Phillips, Kathleen A. Doherty, and William Nardini regarding clemency for the CIA officers (including myself) convicted in the Milan rendition case (see attached letter).
- Constituting or reflecting communications by or to DOS officials (including but not limited to the Secretary of State and Ambassador John Phillips) requesting the assistance of Avv. Cagnola in file a clemency action on behalf of all 25 of the remaining convicted CIA officers.
- Constituting or reflecting communications between the U.S. Embassy and Avv. Cagnola which mention, discuss, or refer to obtaining approval to proceed on the convicted CIA officers' behalf, payment of Avv. Cagnola's fees, or which CIA officers' behalf clemency will be sought.

73.     Under 5 U.S.C § 552(a)(6)(C)(i), Plaintiff is deemed to have exhausted her

administrative remedies with regard to her FOIA/PA request to the Department of State.

COUNT I:
VIOLATION OF FOIA/PA
(All Defendants)

74.     This Count realleges and incorporates by reference all of the preceding

paragraphs.

75.     The CIA has violated FOIA/PA by failing to grant, or even rule on,

Plaintiff's request for a fee waiver and failing to determine whether it will produce

records responsive to Plaintiff's FOIA/PA request, within the time period prescribed by 5

U.S.C § 552(a)(6)(A)(i).

15

76.     The OSD has violated FOIA/PA by failing to grant, or even rule on,

Plaintiff's request for a fee waiver and failing to determine whether it will produce

records responsive to Plaintiff's FOIA/PA request, within the time period prescribed by 5

U.S.C § 552(a)(6)(A)(i).

77.     The Department of State has violated FOIA/PA by failing to grant, or even

rule on, Plaintiff's request for a fee waiver and failing to determine whether it will

produce records responsive to Plaintiff's FOIA/PA request, within the time period

prescribed by 5 U.S.C § 552(a)(6)(A)(i).

78.     Plaintiff has been and will continue to be irreparably harmed until

Defendants are ordered to comply with Plaintiff's FOIA/PA requests.


<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court:


(1) Declare Defendants' failure to comply with FOIA and the Privacy Act to be

    unlawful;

(2) Enjoin Defendants from continuing to withhold the records responsive to Plaintiff's

    FOIA and Privacy Act requests and otherwise order Defendant to produce the

    requested records without further delay, on an expedited basis and without

    requiring payment of fees;

(3) Grant Plaintiff an award of attorney fees and other litigation costs reasonably

    incurred in this action pursuant to 5 U.S.C § 552(a)(4)(E)(i) and 5 U.S.C §

    552a(g)(3)(B); and

(4) Grant Plaintiff such other and further relief which the Court deems proper.

16

Respectfully Submitted,


    /s/ Jeffrey Light
_____

Jeffrey L. Light
D.C. Bar #485360
1712 Eye St., NW
Suite 915
Washington, DC 20006
(202)277-6213

*Counsel for Plaintiff*